UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

QUEEN GRINER,

    Plaintiff,

vs.                                                        Case No. 3:08-cv-770-J-MCR

MICHAEL ASTRUE, Commissioner of the
Social Security Administration,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **REVERSED** and **REMANDED** for proceedings not inconsistent with this opinion.

**I.    PROCEDURAL HISTORY**

Plaintiff protectively filed applications for a period of disability and disability insurance benefits ("DIB") as well as Supplemental Security Income ("SSI") payments on July 20, 2004, alleging an inability to work since May 1, 2003. Plaintiff also protectively filed an application for disabled widow's benefits on July 20, 2004. The Social Security Administration ("SSA") denied these applications initially and upon reconsideration. (Tr. 43-44, 47-48). Plaintiff then requested (Tr. 49) and received a

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 8).

1

hearing before an Administrative Law Judge (the "ALJ") on March 21, 2007. (Tr. 208-42). Because the ALJ continued the initial hearing to further develop the record, a supplemental hearing was held on January 10, 2008. (Tr. 240-96).

On March 17, 2008, the ALJ issued a decision finding Plaintiff was not disabled. (Tr. 15-29). On April 22, 2008, Plaintiff filed a Request for Review by the Appeals Council. (Tr. 7). The Appeals Council subsequently denied Plaintiff's request for review. (Tr. 4-6). Accordingly, the ALJ's March 17, 2008 decision was the final decision of the Commissioner. Plaintiff timely filed her Complaint in the U.S. District Court on July 29, 2008. (Doc. 1).

## II.     NATURE OF DISABILITY CLAIM

### A.     Basis of Claimed Disability

Plaintiff claims to be disabled since May 1, 2003, due to lower back pain, hypertension, obesity, and dysthymia.

### B.     Summary of Evidence Before the ALJ

On the dates of the two hearings before the ALJ, Plaintiff was fifty-two years of age and a graduate of the eighth grade. (Tr. 59, 208, 214, 243). Plaintiff had past relevant work as a sewing machine operator, poultry hanger, and cleaner. (Tr. 68-77). Plaintiff's medical history is discussed in the ALJ's decision and will be summarized here.

The medical record evidence before the ALJ was "sparse." (Tr. 21). On July 22, 2004, Plaintiff sought medical treatment at St. Vincent's Medical Center ("St. Vincent's") for complaints of back pain, swelling in her legs and feet, abdominal pain and nausea.

(Tr. 97-114). Objective tests[2] were unremarkable. (Tr. 103-06). Plaintiff was discharged from St. Vincent's with pain and blood pressure medication and advised to see a follow-up physician. (Tr. 100-01).

On October 27, 2004, Plaintiff underwent a consultative examination with Dr. Hung V. Tran, M.D. ("Dr. Tran"). (Tr. 115-21). Plaintiff's chief complaints to Dr. Tran were shortness of breath, back pain, and inability to walk more than one-half of a city block or lift anything from the floor. (Tr. 115). X-rays of Plaintiff's lumbar spine revealed "[d]islocation, the L4 moves forward on L5 of 0.5 cm." (Tr.117). Additionally, Plaintiff's forward flexion in her lumbar spine was limited to sixty degrees out of ninety and her grip was weak bilaterally. Id. Otherwise, Plaintiff's examination was unremarkable and she was diagnosed with obesity, shortness of breath, and a back injury.

In July and August 2005, Plaintiff presented to Eastside Family Clinic ("Eastside") with complaints of back pain, swelling in her ankles, high blood pressure, and headaches. (Tr. 169-70). Plaintiff was diagnosed with back pain and hypertension. (Tr.168). Further, she was prescribed Tarka and recommended to follow up with an orthopedic specialist. Id. There was no indication in the record Plaintiff followed up with an orthopedic specialist, but it was noted at Eastside she would have to pay the cost of the specialist out of pocket. (Tr. 168).

Plaintiff later returned to Eastside on August 9, 2006 for a follow-up visit regarding her hypertension. (Tr. 158). She again was diagnosed with hypertension and back pain. (Tr. 159). Aside from paraspinal back tenderness and high blood pressure,

---

[2] Including an ECG, diagnostic radiology of the lungs and bowel, and an ultrasound of the gallbladder.

Plaintiff's examination was normal. Medication was prescribed for the hypertension and Plaintiff was instructed to take Tylenol for the back pain. On August 16, 2006, Plaintiff again was seen for a follow-up appointment. Plaintiff was diagnosed with hypertension and sciatica, but was able to move all extremities well with no clubbing or edema noted. (Tr. 153). The straight leg test also caused Plaintiff problems. Id. She was prescribed medication for back pain and hypertension and advised to lose weight. Id. There was no record evidence of Plaintiff returning to Eastside after August 2006.

On February 28, 2007, Plaintiff was evaluated by Dr. Ciceron V. Lazo, M.D. ("Dr. Lazo") at the request of her attorney. (Tr. 139-49). Plaintiff reported to Dr. Lazo her pain was almost constant but got worse when she stood, walked, or drove for too long. (Tr. 139). Also, she reported pinching sensations in her legs after several minutes of walking. Id. Further, Plaintiff was not able to bathe due to difficulty getting in and out of the bathtub and had family members perform most household chores for her. Id. Dr. Lazo noted Plaintiff had difficulty getting on and off the exam room table. Id.

Plaintiff's back and spine examination revealed moderate paravertebral muscle spasms, pain with lumbar range of motion and limited forward flexion, extension, and lateral rotation. (Tr. 142). Good range of motion was reported in both the upper and lower extremities; however, Dr. Lazo noted the motor strengths in both were mildly diminished. Id. Plaintiff took heavy steps when walking, but her gait and station did not appear to be impaired. Id. Based on his examination, Dr. Lazo diagnosed Plaintiff with moderate to marked lower back pain which radiated to her lower extremities due to probable herniated disc with radiculopathy. Id. Additionally, he diagnosed myofascial thoracolumbar pain. Id.

4

On March 1, 2007, Dr. Lazo completed a residual functional capacity ("RFC") questionnaire. (Tr. 143-47). Dr. Lazo's diagnosis on the questionnaire was "[l]ow back moderate to marked pain with radioculopathy." (Tr. 143). He further reported that in an eight-hour work day, Plaintiff could sit and stand/walk for less than two hours (Tr. 145) and could only occasionally lift and carry ten pounds in a competitive work situation. (Tr. 146). Finally, Dr. Lazo concluded Plaintiff was "not capable of being in [a] job situation." (Tr. 145, 146).

On March 21, 2007, the first hearing before the ALJ was held. (Tr. 208-42). Plaintiff testified she hurt her back while working at Tyson Food in 1998. (T. 236). She reported she visited St. Vincent's for her back pain in 1998. (Tr. 237). Plaintiff clarified she could not follow up with a private doctor for the back problems because she did not have medical insurance (Tr. 237-38), but also noted she received treatment at Eastside for her blood pressure and back problems. (Tr. 238-40). After he opined that there was not much evidence in the record of medical treatment, the ALJ decided to have Plaintiff examined by an orthopedic doctor, who would complete an RFC evaluation. (Tr. 240-42). Plaintiff was also to undergo an IQ test. (Tr. 241-42). The March 21, 2007 hearing was then continued. (Tr. 242).

Plaintiff was consultatively examined by Dr. Lynn Harper-Nimock, M.D. ("Dr. Harper-Nimock") on July 6, 2007 at the request of the ALJ.[3] (Tr. 183-88). Plaintiff again had difficulty getting on and off the exam table. (Tr. 184). Dr. Harper-Nimock noted full range of motion in Plaintiff's upper extremities, but decreased range of motion of her

---

[3] While the ALJ thought the examination would be by a Dr. Switzer (Tr. 241), Dr. Harper-Nimock in fact conducted Plaintiff's examination. (Tr. 183-88).

5

hips and knees. (Tr. 184). Also, in Plaintiff's cervical, thoracic, and lumbar spines, Dr. Harper-Nimock noted decreased flexion, extension, lateral flexion bilaterally, and decreased rotary movements bilaterally. (Tr. 184). X-rays showed grade one anterolisthesis of L3 on L4 and of L4 on L5; however, pars defects could not be well evaluated due to Plaintiff's body habitus. (Tr. 185).

Dr. Harper-Nimock diagnosed Plaintiff with degenerative disc disease, degenerative joint disease, hypertension, morbid obesity, and low back pain with radiculopathy. Id. Dr. Harper-Nimock did not complete an RFC evaluation; however, she did note that Plaintiff would have "moderate limitations for prolonged sitting, standing, walking, climbing, or heavy lifting." Id.

On December 28, 2007, Plaintiff returned to Dr. Lazo for a physical examination. (Tr. 203-07). The examination revealed decreased range of motion of the thoracolumbar spine and forward flexion limited to fifty degrees. (Tr. 204). Plaintiff had decreased range of motion of the right shoulder. Id. Also, Dr. Lazo noted Plaintiff was unable to lie on her back or abdomen or lift six pounds with either hand. Id. Dr. Lazo's final assessment was moderate to severe low back pain radiating to the lower extremities, degenerative disc disease of the lumbar spine, grade one anterolisthesis of L3-L4 and L4-L5, degenerative facet arthropathy, right shoulder impingement syndrome, morbid obesity, hypertension, and glucose intolerance. (Tr. 205).

Plaintiff was also evaluated for her cognitive abilities by Dr. Peter Knox, M.D. ("Dr. Knox"). (Tr. 189-202). Plaintiff's IQ test revealed her general cognitive ability to be in the borderline range of intellectual functioning. (Tr. 194). Additionally, Plaintiff's medical file was reviewed by two non-examining consultants. (Tr. 122-29, 130-37).

6

Both non-examining consultants deemed Plaintiff capable of doing light work. Id.

On January 10, 2008, Plaintiff returned for a final hearing before the ALJ. (Tr. 243-96). Plaintiff testified she was unable to obtain a "Shands card" for free medical care;[4] however, she also noted she went to the doctor as much as they would allow her without the card. (Tr. 257). Regarding her injuries, Plaintiff told the ALJ the pain in her back was a pinching pain (Tr. 265) and she could only stand for about fifteen minutes or sit for about thirty minutes to an hour before she needed a break. (Tr. 266). Plaintiff further testified her brother typically came by and completed her chores (Tr. 270), her sister did her shopping for her (Tr. 273), and she spent six to seven hours a day in a reclined position watching television on a loveseat. (Tr. 274). A five pound bag of sugar was the heaviest object Plaintiff had lifted before the hearing because of her pain. (Tr. 269). Plaintiff said she could no longer perform her previous sewing job because sewing required her to slump over forward. (Tr. 277).

The ALJ also questioned a vocational expert at the January 10, 2008 hearing. (Tr. 282-89). The ALJ asked the vocational expert hypothetically whether Plaintiff was capable of her past jobs assuming he found she was able to sit for a total of six hours, stand and walk for six hours, lift and carry twenty pounds occasionally and lift and carry ten pounds or less frequently. (Tr. 285-86) The vocational expert testified that Plaintiff, with those limitations, could return to a sewing machine operator job as she performed it or as it was performed in the national economy or to a poultry hanger job as she performed it. (Tr. 286). With the limitations modified to sitting for a total of four hours

---

[4] Plaintiff testified she was unable to get the card because her son, whom she was living with, would not take the necessary steps. (Tr. 264).

7

and standing and walking for four hours alternating every thirty to sixty minutes, the vocational expert precluded past work, but listed four "light" jobs Plaintiff could perform. (Tr. 286-87).

When Plaintiff's attorney questioned the vocational expert, there was a discrepancy between the ALJ and the attorney over the meaning of the word "moderate" from Dr. Harper-Nimock's report. (Tr. 290-93). The vocational expert determined using Plaintiff's definition of "moderate" that Plaintiff would have been precluded from work; however, the ALJ did not accept that definition nor did the ALJ define "moderate" himself. Plaintiff requested the ALJ re-contact Dr. Harper-Nimock for an RFC questionnaire or clarification of the term "moderate," but the request was denied. (Tr. 294-95).

### C. Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in a substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve (12) months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2008)[5]. The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520(a), 416.920(a). First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(a)(4)(i). Second, if a claimant does not have any impairment or a combination of impairments which significantly limit her physical or mental ability to do

---

[5] All further references to the C.F.R. will be to the 2008 edition unless otherwise noted.

basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(a)(4)(ii).

Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(iv). Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. §§ 404.1520(g), 416.920(a)(4)(v). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the nondisability requirements of the Act and was insured for benefits through the date of the decision. (Tr. 17-18). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date, May 1, 2003. (Tr. 18). At step two, the ALJ held Plaintiff had the following severe impairments: "a history of degenerative disc disease, degenerative joint disease, hypertension and obesity." Id. The ALJ found Plaintiff's dysthymia to be non-severe. Id. At step three, the ALJ concluded Plaintiff did not meet or equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20).

The ALJ then determined Plaintiff retained an RFC, in an eight-hour work day, to:

> sit for a total of [six] hours and stand and walk for a total of [six] hours. She [could] lift and carry [twenty] pounds occasionally and [ten] pounds or less more frequently. . . . She [was] also limited to unskilled or low level semi-skilled work due to her borderline intellectual functioning.

(Tr. 20-21). In determining Plaintiff's RFC, the ALJ first noted the medical evidence of record was sparse. (Tr. 21). After discussing the evidence summarized supra pp. 2-8, the ALJ explained how he weighed the evidence. (Tr. 23-25).

> First, the ALJ rejected Dr. Lazo's March 2007 findings because he found:
>
> Dr. Lazo's stated assessments as to the [Plaintiff's] ability to do work-related activities to be conclusory, substantially inconsistent with the evidence of record and not based on any cogent medical rationale. . . . Dr. Lazo [offered] no explanation or rationale whatsoever for the functional limitations offered. Nor did he provide a date when such limitations began despite being requested to do so. While he attributed [Plaintiff's] radicular low back pain to a possible herniated disc, the x-rays of record [did] not evidence any disc herniation and no other examining source has so found. The record [did] not show Dr. Lazo performing or ordering any diagnostic testing. Moreover, prior to seeing Dr. Lazo, the medical evidence [showed] the claimant was doing well overall with few complaints other than some periodic back pain which was treated with Motrin and Tylenol for Arthritis and later Lortab . . . .

(Tr. 23). The ALJ did not specifically mention whether he assigned any weight to Dr. Lazo's February 2007 or December 2007 findings. Next, the ALJ assigned "some weight" to Dr. Harper-Nimock's findings while noting she did not provide an RFC. (Tr. 23). Also, the ALJ considered and assigned weight to the findings of Dr. Tran and Dr. Knox "as such findings [were] consistent with the record as a whole" and "[gave] some weight to the findings of the State agency consultants who reviewed the medical file and found [Plaintiff] to be capable of light work . . . ." Lastly, the ALJ determined Plaintiff was largely not credible in any of her testimony. (Tr. 24-25).

At step four, the ALJ determined Plaintiff was capable of performing her past relevant work as a sewing machine operator as the job was actually performed by Plaintiff and as it was generally performed in the national economy and as a poultry hanger as Plaintiff actually performed it, based on the testimony of a vocational expert.

(Tr. 26). Despite finding Plaintiff "not disabled" under step four, the ALJ continued to step five. (Tr 27-28). Based on the vocational expert's testimony and Plaintiff's age, education, work experience and RFC, the ALJ found Plaintiff capable of making a successful adjustment to other work that existed in significant numbers in the national economy. Id. Thus, the ALJ found Plaintiff "not disabled" under step five as well.

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable

to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B. Issues on Appeal

Plaintiff argues two issues on appeal.  First, Plaintiff believes the ALJ erred in his duty to fully and fairly develop the record by failing to request clarification from the Commissioner's consultative examiner regarding Plaintiff's functional limitations.  (Doc. 11, pp. 13-19).  Second, Plaintiff claims the ALJ's reasons for disregarding the medical evidence from Dr. Lazo were not supported by substantial evidence.  (Doc. 11, pp. 19-24).  The Court will examine each of these claims.

**Whether the ALJ erred in his duty to fully and fairly develop the record when he failed to request clarification from the Commissioner's consultative examiner regarding Plaintiff's functional limitations.**

Plaintiff argues the ALJ erred in his duty to fully and fairly develop the record when he refused to re-contact Dr. Harper-Nimock regarding Plaintiff's functional limitations.  (Doc. 11, pp. 13-19).  Specifically, Plaintiff argues the ALJ should have requested Dr. Harper-Nimock complete an RFC Questionnaire or define the term "moderate" she used in her report.  (Doc. 11, p. 19).  The Commissioner, however, argues the ALJ did not err in failing to re-contact Dr. Harper-Nimock because he had all the information he needed to make a disability determination.  (Doc. 16, p. 9).

In Sims v. Apfel, the Supreme Court noted "Social Security proceedings are inquisitorial rather than adversarial" and "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."  530 U.S. 103, 111

(2000). Further, the ALJ has a duty to fully and fairly develop the record. Welch v. Bowen, 854 F.2d 436, 438 (11th Cir. 1988). Under 20 C.F.R. § 404.1519a, a consultative examination by the ALJ is required when "the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [the] claim." Accord 20 C.F.R. 416.919a. If the report of the consultative examination is inadequate or incomplete, the ALJ "will contact the medical source who performed the consultative examination, give an explanation of [his] evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." 20 C.F.R. §§ 404.1519p, 416.919p. A complete consultative examination should include "a statement about what you can still do despite your impairment(s) . . . . [and] should describe the opinion of the medical source about your ability, despite your impairment(s), to do work-related activities, such as sitting, standing, walking, lifting, [and] carrying . . . ." 20 C.F.R. §§ 404.1519n, 416.919n.[6]

In the instant case, the ALJ indicated at the first hearing there was not much evidence in the record on Plaintiff's condition. (Tr. 240-41). Because he was troubled by the lack of evidence, the ALJ continued the hearing to send Plaintiff for a consultative examination. Id. Under 20 C.F.R. § 404.1519a, the ALJ probably would not have ordered a consultative examination unless he felt the evidence was insufficient to support making a decision on Plaintiff's claim. Accord 20 C.F.R. 416.919a.

Dr. Harper-Nimock's examination report was missing an RFC questionnaire (part

---

[6] While the absence of an RFC questionnaire does not automatically make a report incomplete, the ALJ specifically requested one and noted in his decision Dr. Harper-Nimock's report was missing the RFC questionnaire. 20 C.F.R. §§ 404.1519n, 416.919n.

13

of a complete consultative examination under 20 C.F.R. §§ 404.1519a, 416.919a), but included a medical source statement, which read: "The claimant has moderate limitations for prolonged sitting, standing, walking, climbing, or heavy lifting." (Tr. 183-88). The term "moderate" became the subject of a dispute between the ALJ and Plaintiff's attorney at the second hearing, and the term was never defined. (Tr. 290-93). When Plaintiff's attorney asked the vocational expert a hypothetical based on her definition of "moderate," the vocational expert stated all work would be precluded. (Tr. 293-94). Plaintiff's attorney also mentioned she had a conversation with the ALJ off the record where the ALJ was "dismayed and a little disappointed that [Dr. Harper-Nimock] did not provide a full RFC." (Tr. 294). That conversation was not disputed by the ALJ.

Before the second hearing ended, Plaintiff's attorney requested the ALJ clarify the term "moderate" with Dr. Harper-Nimock or obtain a full RFC, but he refused. (Tr. 294-95). In his decision, the ALJ apparently assigned little weight to the findings of Dr. Harper-Nimock, noting that no RFC questionnaire setting forth Plaintiffs ability to do work related activities was provided. (Tr. 23). Additionally, the ALJ apparently assigned no weight to the findings of Dr. Lazo.[7] Id. Thus, although the ALJ continued Plaintiff's first hearing because there was not enough evidence in the record, the ALJ made a decision with essentially the same evidence. (Tr. 15-29). Therefore, the ALJ did not fully and fairly develop the record and should have re-contacted the consultative examiner, Dr. Harper-Nimock, as directed by 20 C.F.R. §§ 404.1519p, 416.919p.

---

[7] While the ALJ explicitly stated he rejected Dr. Lazo's March 2007 findings (the RFC), the February 2007 and December 2007 findings were never expressly considered nor assigned any weight in the ALJ's analysis. See supra p. 10.

14

Even where a ALJ does not meet his duty to fully and fairly develop the record, Plaintiff is only entitled to a remand upon a showing of prejudice.  Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995).  In the instant case, the lack of medical evidence was prejudicial to Plaintiff.  It is unclear whether Dr. Harper-Nimock's definition of "moderate" or another RFC questionnaire would markedly change Plaintiff's RFC as determined by the ALJ; however, as Brown indicated, "[i]n the absence of proof to the contrary . . . we must assume that it does lend credence to her allegations."  44 F.3d at 936.  It is also important to note Dr. Harper-Nimock's consultative examination was almost three years more recent than that of Dr. Tran (which the ALJ accepted to an unknown degree) in 2004.  (Tr. 115, 185).

Therefore, the record in the instant case "reveals evidentiary gaps which result in unfairness or 'clear prejudice.'"  Brown, 44 F.3d at 935 (quoting Smith v. Schweiker, 677 F.2d 826, 830 (11th Cir. 1982)).  Accordingly, the Court will remand the case to the ALJ to order a new consultative examination.

### Whether the ALJ erred in disregarding the medical evidence from Dr. Lazo

Plaintiff also argues the ALJ erred in disregarding the medical evidence from Dr. Lazo.  Specifically, Plaintiff argues the ALJ's reasons for disregarding Dr. Lazo's medical opinion evidence were not supported by substantial evidence.  (Doc 11, pp. 19-24).  Defendant argues the ALJ properly accorded only limited weight to Dr. Lazo's opinion and assessment because he treated Plaintiff on only a limited basis and his findings did not support the severe limitations he outlined.  (Doc. 16, p. 7).

The ALJ is required to consider every medical opinion in the record.  20 C.F.R. §§ 404.1527(d), 416.927(d).  The evidence should be evaluated based on several

15

factors, including: (1) whether the physician actually examined the claimant; (2) length and frequency of the treatment relationship; (3) nature and extent of the relationship; (4) supportability; (5) consistency and (6) specialization. See Id. §§ 404.1527(d)(2)-(6), 416. 927(d)(2)-(6). Additionally, an ALJ may not arbitrarily reject uncontroverted medical testimony. Walden, 672 F.2d 835, 839 (11th Cir. 1982) (citing Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979)). However, medical source opinions on dispositive issues, such as whether a claimant is able to work, are not medical opinions. See 20 C.F.R. §§ 404.1527(e), 416. 927(e).

In the instant case, the ALJ completely rejected Dr. Lazo's March 2007 findings because he found them conclusory, substantially inconsistent with the evidence of record, and not based on any cogent medical rationale. (Tr. 23). Also, the ALJ noted Dr. Lazo: did not offer an explanation for the functional limitations offered; did not provide a date when such limitations began despite being requested to do so; attributed Plaintiff's radicular low back pain to a probable herniated disc even though x-rays of record did not evidence herniation and no other examining source found herniation; and did not perform or order any diagnostic testing. Id. Lastly, the ALJ asserted Plaintiff had been doing well overall before visiting Dr. Lazo. Id.

Based on the reasons provided, the ALJ was entitled to reject Dr. Lazo's opinion that "[plaintiff was] not capable of being in [a] job situation" under 20 C.F.R. §§ 404.1527(e), 416. 927(e). However, the ALJ was not entitled to reject all of Dr. Lazo's findings.[8] First, Dr. Lazo examined Plaintiff shortly before completing the RFC

---

[8] Including the remainder of the March 2007 RFC questionnaire and the February and December 2007 examination notes.

questionnaire and noted objective findings in his report. (Tr. 139-49). Second, while the ALJ found Dr. Lazo's findings inconsistent with the record, he also determined the same record was incomplete at the first hearing. (Tr. 238). Third, to say there was no rationale for Dr. Lazo's findings would be to ignore the February examination, where Dr. Lazo noted his objective findings. (Tr. 139-42). Fourth, the Court joins Plaintiff in failing to see the significance of Dr. Lazo not offering a date when Plaintiff's limitations began. (Doc. 11, p. 22). Fifth, while Dr. Lazo *may* have incorrectly attributed radicular back pain to a probable herniated disc (Tr. 142), the fact that an x-ray did not show a possible prognosis was not grounds to reject an examining physician's entire findings. Sixth, because Dr. Lazo was a consultative examiner, he would not perform or order diagnostic testing unless asked to do so. Failing to order a test he was not asked to order was hardly grounds to reject all of Dr. Lazo's findings. Seventh, the ALJ pointed out Plaintiff was doing fine prior to seeing Dr. Lazo (Tr. 23); however, Plaintiff's medical records and testimony point out she sought treatment for her back on several occasions (Tr. 97-114, 167-70, 158-59, 152-53) and could not receive further treatment because she had no insurance or access to free medical care. (Tr. 257, 260).

Additionally, Dr. Lazo was the only examining physician who completed an RFC. (Tr. 143-47). Two other RFCs were completed by consulting physicians who simply reviewed Plaintiff's file. (Tr. 122-29, 130-37). While the ALJ completely rejected the findings of Dr. Lazo, the ALJ's RFC determination (Tr. 23) looks strikingly similar to the RFC questionnaires provided by the consulting physicians. (Tr. 122-29, 130-37). Medical opinions from consulting physicians are "entitled to little weight and taken alone [do] not constitute substantial evidence to support an administrative decision." Swindle

17

v. Sullivan, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (citing Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)). Thus, the ALJ should not have completely rejected the findings of Dr. Lazo and replaced them with those of non-examining consulting physicians. Because there was no evidence in the record to contradict Dr. Lazo's findings aside from opinions of non-examining physicians[9] (Tr. 122-29, 130-37), the Walden standard did not allow the ALJ to arbitrarily reject Dr. Lazo's entire findings. See Walden, 672 F.2d at 839.

In conclusion, substantial evidence did not exist to completely reject the findings of Dr. Lazo. While the ALJ was not required to agree with Dr. Lazo's opinion on dispositive issues (whether Plaintiff could return to work), he was not entitled to arbitrarily reject all of Dr. Lazo's findings. Accordingly, on remand, the ALJ is instructed to reconsider all of Dr. Lazo's findings including the February, March and December 2007 findings.

## IV.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **REVERSED** and **REMANDED** pursuant to sentence four, 42 U.S.C. 405(g). On remand, the ALJ shall order a consultative examination of Plaintiff specifically to include an RFC. The ALJ shall also determine, based on the RFC, whether Plaintiff is able to perform her past relevant work or other work existing in the national economy. Finally, the ALJ shall re-consider the weight given to Dr. Lazo's examinations. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

---

[9] It is unclear whether the incomplete findings of Dr. Harper-Nimock would contradict Dr. Lazo's findings.

18

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the receipt of a notice of award of benefits from the Social Security Administration. **This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

**DONE AND ORDERED** at Jacksonville, Florida, this   13th   day of July, 2009.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record